Case number 23-3860 Corvin English v. George Kral et al. Oral argument not to exceed 15 minutes per side. Mr. Joseph, for the appellant, you may proceed. Good afternoon. My name is Hasani Joseph on behalf of the appellant Corvin English. May I reserve three minutes for rebuttal? May it please the court. The principal issue here is whether the defendant officers are entitled to qualified immunity as to the uses of force arising out of the incident on Thanksgiving, November 24, 2017. The first issue is the district court failed to draw all inferences in the record in the most favorable light to the appellant. When considering a motion for summary judgment when genuine issues of material facts exist, the court is clear that it should be denied. It's a two-part test. The court applies when addressing the qualified immunity issue as to these officers, first, addressing the objective reasonableness of the use of force, and second, whether the use of force violated clearly established rights at the time of the incident. The totality of the circumstances must be considered here and is critical for the analysis. The gram factors guide this, and the district court already agreed that the first two factors of the gram factors are in the appellant's favor. Since this is a de novo review, I'll briefly address each of these first two and then on to the third one. The first factor is the severity of the crime that was alleged. And in this situation, the facts showed from the testimony of the appellant in the criminal case that he got found guilty of, the lieutenant on the case had direction from the captains and from the deputy chief to post in front of this location from Thursday to Sunday and put two vehicles out of service or two squads out of service, a sergeant, and then this lieutenant Scoble would also show up. On this particular incident, there was no calls, there was no complaints, it was just a direct target enforcement. In this particular situation, on this particular day, the officer said he was observing loud sounds, loud music, and also that there was cars that were parked or parking infractions for vehicles that were at this location. So these were tools that they would use in order to make the charge of a chronic nuisance, which is originally in Toledo Municipal Code cited as a misdemeanor of the fourth degree, but after the first one, it's a misdemeanor of the third degree. Regardless of any of those three, it would still be considered a very minimal type of crime. He was never charged with any type of music ordinance or sound ordinance. He was never charged with any type of parking infraction himself, and the chronic nuisance that he was eventually, well, it was taken to the grand jury and the grand jury returned a no bill. So even that original charge that they tried to use as a pretext to go to this location, that was not even returned by the grand jury. The second factor is the threat to the officers or others. I don't mean to interrupt you, but do we get to this? What about the release that he signed? Well, the release is for a separate incident that happened three years later. That was January 12, 2020. That is regarding one particular incident where he was attending and there was video, and that situation under the rumory would be determinative whether that could be able to proceed or not. But I think the essential and the main point of this claim is about the November 24, 2017 claim. The only incident regarding the January 12, 2020 claim is about this arrest, that he got arrested for obstructing official business, and he signed a release, and whether that release is honored or not, it would only affect two different, two particular officers from that incident alone, which has nothing to do officer-wise with the five officers that took place. From the November? Exactly. I got you. So just addressing that release, did you raise rumory when they sought to dismiss that claim based on the release? Well, I wasn't his attorney at the trial level for the criminal case. He actually had an attorney. We're just wondering if the attorney that represented him argued the rumory elements.  As far as I know, the facts show that he was represented by counsel, and he did sign this release. There are facts that are in the record regarding, you know, because of the consistent harassment which took place. Did you represent him below in this case? In the criminal case? No, in this case. At the trial level, or yes, for the civil case, I originally got on when the summary judgment deadline was due, actually. So I was retained at that point. He had an original attorney who filed a complaint, an amended complaint, and the record is void of an answer. I'm not sure if I realized that just recently, but I was retained at the summary judgment phase to respond to the City of Toledo's summary judgment. And then after it got dismissed, I also was retained for the appeal. The third factor is where the district court contradicts itself and is the primary focus of the district court for this analysis, is whether there was active resistance. So this court has held consistently that noncompliance alone does not constitute active resistance. There must be something more. The district court expressly writes that, in its opinion, that on this third factor,  while there is a genuine issue of material fact as to whether plaintiff physically resisted defendants, he admits to returning into the building away from the officers when faced with arrest. That end quote. So this is, first, the district court is correct that there is a genuine issue of material fact, and second, the district court mischaracterized this evidence and did not look at it in the light most favorable with any inferences to the noncompliant party, which is the appellant here. The district court cites two appellants' affidavit stating, quote, I returned inside my studio after Lieutenant Scoble ordered Officer Gankowski to arrest me, end quote. However, the court is supposed to leave such explanation and understanding for the jury to wait. This was an interpretation of the district court by piecemealing and taking out of context certain things within the affidavit to do the exact opposite of what the standard is, which is to present these facts or look at these facts in the light most favorable. So what's the light that's most favorable to your client on that particular? On this particular incident, it makes a fact, it makes a, and the issue particularly with regards to that is if the appellant never stepped out of the building, never stepped out of the structure, Officer Gankowski was standing behind the door. He testified in the criminal case in their testimony and the transcripts in the record that he never stepped out of the record. The appellant never stepped out of the building. I'm sorry. The appellant also states he never stepped out. And that's a factor because if in fact that they want to use his ability to evade or him stepping away, going from outside to inside after he was allegedly told that he was under arrest, that makes a factor if he's within his private structure, which that's what we allege. Evading an officer would seem a lot less likely or a lot less of an issue. So if you answer the door, the police are there, and they say, hi, we're here to arrest you, and you turn around and go to the kitchen, that's different than if you were down on your sidewalk and they come and say, we're here to arrest you, and you go back in the house. I'm just trying to understand what you're saying. Yeah, I think that is definitely the point. If we're talking about evading the arrest, and although the city or the officers claim that they told the individual or told the appellant that he was under arrest, what we had alleged was that the appellant said he was under the threat of arrest, and that's another difference is that when an officer says, you know, if you continue, you will be arrested, or making a threat of arrest is different than claiming you are under arrest. And so that is another. I'm sorry. I thought you said that the complaint says, or his testimony or affidavit, I'm not sure what it was, said that he was told he was under arrest. The district court, the way how they wrote it in the opinion is that he was told that he was under arrest. That's how the district court construed the affidavit. Okay, what does the affidavit say? Okay, the affidavit says, so the district court, what the district court wrote, it said, I returned inside my studio after Lieutenant Scoble ordered Officer Gankowski to arrest me. However, what the actual quote is, is that what is actually in the affidavit, that TPD officers threatened to arrest me, and I returned inside my studio, because I knew the interaction was leading to an unnecessary altercation and harassment initiated and purportedly justified by TPD officers. Now, there's a difference because the structure contains a studio. So the district court stated that he interpreted what the affidavit said, is that he was returning into the building, but instead he's actually saying, I returned inside my studio, which is still within the structure. He's opening the door, he sees the officers that are out there, and he goes back into the studio. There's a foyer area. The district court used Appellant's affidavit of returning inside my studio to mean returning into the building. And again, I think that does go to the causes, is he evading arrest, is he trying to run away, or anything to that factor. That would fall into factor number three of the Graham v. Tims. I'm sorry. The way the district court took its own understanding of the paragraph and accepts it as a matter of law being per se active resistance is reversible error. Since the criminal case, we have evidence in the record that shows that the criminal case judge, that the appellant ended up taking the case to a jury that he was charged with that night, which was an assault on a police officer, obstructing official business, and resisting arrest. He was found not guilty of all three charges by the jury. And so the judge in the transcript, in the record, states that, as well as Officer Gankowski, that the appellant being inside, that the appellant was inside the entire time. He never walked out of the... Maybe you want to wrap up. I know that you were going through all five of the Graham factors. Yes. That's three. Do you have a concluding statement that you want to make? Well, I have... Of course, you'll have your rebuttal. Yes. For now, I'll rest and I'll be back for rebuttal. Thank you. Good afternoon, your honors. John Madigan from the City of Toledo Law Department. This case is a case that I think the court needs to realize started way back before November 24th of 2017. It actually started back earlier that summer with the same type of activity that you're seeing here today on the record taking place more than one time, at least three times during that period of time, where the police were called to this business, if you want to call it that, located on a major street in Toledo, but also adjacent to residential neighborhoods. Wasn't the testimony, though, that the police weren't always called? Sometimes they just showed up there at the location and surveilled and then had encounters with... Well, okay. They weren't called. I'll take that back. They responded or they went by and noticed the problem. What I'm trying to point out is that there was a problem here, and it was a problem that was constantly recurring, noise, cars parked everywhere. People can't even walk down the sidewalks because cars are parked on the sidewalk. So at this particular date, November 24th, the police find the same situation going on again, and they call out. And they know who he is. They know who Mr. English is because they've seen him before. It's the same location with the same problem. They tell him, you've got to stop. You've got to turn it down. He opens the door, looks at him, slams the door, goes back in. They yell at him again. You've got to turn it down. You're going to be put under arrest. He opens the door, calls them names, and the district court noted that, even noted in the affidavit that he used language that was strong to show his discontent with the police. They called him, and he called them names. Officer Scoble instructed Officer Gankowski to place him under arrest. And he was told, you are under arrest. And he was right there facing the police when he was told, you are under arrest. And the arrest was for nuisance? There was another charge, Judge, and this one I can't even answer for you because I didn't handle the prosecution. The county did. It's hard figuring it out from the record. Yeah. There was four charges, actually. There was assaulting a police officer, resisting arrest, obstructing official business, and an offense under the Toledo Municipal Code called chronic nuisance. Well, some of those were reasons. That wasn't the reason for the initial arrest, correct? Like, he got other charges when they tried to arrest him, and then they said, oh, you're resisting and other things. The initial statement of you're going under arrest, that was for? That was for, I think, chronic nuisance. It was a third-degree misdemeanor. It's an arrestable offense. It's not under the state code. And for some reason or another, well, I'm going to guess, again, I'm not a county prosecutor, but they did not choose to indict him for that. They indicted him for the other three charges, and a grand jury found a good true bill on those charges. And then those are the ones that he went to trial on in common pleas. But he did not go to trial on the chronic nuisance. In fact, I don't even know what happened to it. I tried to find that out, and I couldn't find it anywhere. Anyway, getting back to where we are. There was the police chased him into the place. They placed him under arrest. He began to what I would call and what some courts have called turtle, turtling, which is putting his arms underneath his body so that he could not be cuffed by the police officers. They couldn't get at him, and it took finally four officers to get him up off the floor and get him handcuffed and arrested. He talks about how he was brutalized, how his ankle was broken. One thing that's interesting, and I don't think it's been refuted, once he gets arrested and put into a police car, he proceeds to sit on the back seat of the car and attempt to kick the shield down between the front seat and the back seat with his feet, with his supposed broken ankle. Again, in the court record, you'll see that his own expert witness testified or gave an opinion that the ankle injury was from a prior incident not related to this at all. We get to the gram test, Your Honor, and I knew you brought that up. The court looked at the factors considering whether or not the gram test for excessive force has been met. I'll admit that these offenses were not major offenses. There were no felonies here at the point of his arrest. The felony came later on when the officer had him down on the ground, but the offenses were not serious. The district court also found that there was no threat of harm to the officers in the course of this arrest. I'm going to disagree with the district court there. I think that, number one, slamming the door on Officer Gankowski's hand was a violent act, and not only that, biting Officer Gankowski in the leg while he was trying to arrest him was a violent act. These are disputed facts, though. I don't think so. I don't think the biting was. I mean, he was found not guilty of it, yeah, but there was evidence to show that he had been, and there was testimony from Officer Gankowski at this criminal trial that he was bitten. Right, but doesn't the plaintiff deny that? Yeah, I suppose he does, yeah. Those are disputed facts. I think he also denies the arm. Well, he does deny that. At any rate, Your Honor, I think that there was the Graham factors were met in this particular situation. There was resisting. There was resisting physically. There was verbal resisting, and the district court pointed that out, too. To Judge White's point, though, we understand that you're telling us, and it could be what the officers, or not could be, it is, some of this is what was testified to. The plaintiff disputes that, and he has said otherwise. So if we've got these disputed facts, we can't resolve this in your client's favor, can we? I don't think there are facts that rise to a genuine issue of a material fact in every case. Well, the facts that you're giving us right now are facts to show that he met the Graham factors. So the Graham factors are all material for us, aren't they? Well, they all are, Your Honor, but I think we meet those factors regardless of whether or not we agree with the biting argument, the dispute. Well, tell us how you meet them with facts that are not in dispute. We meet them by the fact that he runs into the building. First, he taunts the officers while they're trying to tell him he's under arrest. He runs into the building. He tries to get away from the officer physically. The officers have to chase him into the building, and at that point, they have to put him on the floor to subdue him and cuff him. So, yes, I think he exhibits resistance both verbally and physically. I think that meets the Graham factors. Some of the facts that you've laid out there are also in dispute, though, aren't they? I don't think a lot of them. If you look at the video, I think you'll see that they're not too much in dispute. He's on the ground, and they're not getting him up right away. He's flaying around. He's not flaying, but he's holding his arms underneath him so that he can't be cuffed. I think that meets the resistance definition. I'd also like to get to the fact that the release that was signed for January 12th incident, the plaintiff officers, in that particular case, the defendant was offered an opportunity to plead no contest and be referred to the court's diversion program. He had with him a counsel represented by an experienced criminal defense attorney. That defense attorney agreed, apparently, with the prosecutor at that time. It wasn't me, but another prosecutor. Let me ask you. You're talking about some of the factors that are important to be considered under rumory. We asked plaintiff's counsel whether or not they made an argument with respect to the rumory factors. Did TPD make any arguments on the rumory factors? I saw that in the district court's opinion, but I didn't really see in the court below where TPD made an argument based upon the rumory factors. No, they didn't. They did not do that. Just from the fact that what happened, here's a release for two specific crimes, two specific offenses on one particular date, and the defendant agreed to it. Not defendant, Mr. English agreed to that condition. He went through the diversion program, and his cases were expunged. I think there was plenty of consideration for that, for that particular release. The case is cited by the defense, or the plaintiff, that those release is improper. You can't agree to release a criminal offense. While that may be true if a private party is involved, no private parties are involved here. The city of Toledo was the, I guess, the victim in this case, and that's the party that agreed to it. Rumory says, I believe, that the burden is on you.  You didn't address any. They didn't address any. I mean, they argued coercion separately. Right. And then the judge addressed it, I guess, recognizing that it's something that should be addressed. But it doesn't appear that there are answers to a lot of the factors. Like, we don't know who drafted it. Do you accept that the prosecution drafted it? I will say that having been a prosecutor for 24 years in that court, it was the prosecutor's office form. They have forms, and you fill in the blanks, and that's what happens. It's about a one-pager. But again, the defense attorney for Mr. English was present. He had a chance to look at it, read it, and presumably, I can't say for sure, advised his client, go ahead and sign this. And he did. So again, the court mentions that Mr. English was not a sophisticated defendant under the rumory consideration. Again, that's something I disagree with. Mr. English had been in court many times prior to this. He was not in custody, that's for sure. He had been out a long time. He was represented by counsel. And he had ample time to consider the ability to sign the release. But I don't think that information's in the record. No, it's not. But if you look at the dates involved and when things happened versus when he signed the release, you can see that it's been a long time. I mean, just looking at the dates, November 2017 versus when he signed this release, which was after the 2020 event, and it was long after that. But don't you think it's a problem that, on the one hand, you didn't argue the rumory factors in the court below. The court made a decision based upon the rumory factors. And now you're coming in and saying, well, the court made the right decision. But we don't even agree with all of the discrete considerations that the court made. And that's not surprising because you didn't argue it below. How can we uphold an argument that you didn't make and one with which, frankly, you disagree with the analysis of the district court? Judge, I don't disagree with the reasons why the district court upheld the rumory factors. I think the district court could have added some more to them to justify its decision. But I'm not disagreeing with that ultimate decision. I think the court was right. I mean, this is not a snap judgment type thing where the man's arrested one day and he signs a release the next day. And maybe he's got a public defender. Maybe he doesn't have any attorney at all. It isn't like that. We've had time here to consider what we're signing. And we thought this is what we should do. Finally, Your Honor, I looked at the arguments regarding Chief Kroll and whether or not he had a policy or practice to harass or violate Mr. English's constitutional rights. I don't see anything in the record that shows that that took place. If that was raised, it was only raised in the complaint. And again, with many conclusory arguments in the complaints, it doesn't raise to the level of something that is shown by the defense. I guess I have 59 seconds left, but I'll let it go. Thank you, Your Honors. Your Honors, I wanted to just touch on that last factor for the grant and give my complete thought on it. Or if there's any other questions about anything else, I'd be glad to answer those. But the district court took several different things out of the affidavit and piecemealed them to make the facts against the appellant. And one of these things that's important that fits within the third-gram factor for active resistance is about is there some type of outwardly expression. And the way how the district court wrote in their opinion, it says, quote, expressing himself vocally in an angry and frustrated manner. The correct, the exact wording in the actual affidavit was that I was extremely emotional in expressing myself vocally in an angry and frustrated manner. But I was never kicking any officers or trying to resist in any way. And that any movement was in response to the undue and excessively violent and oppressive force inflicted on my person by the TPD officers, end quote. So this is the second example. And then there was the next example the district court did where the district judge prejudiced the appellant. And that is not viewing the information and making the inferences as the district court is supposed to do at a summary judgment level. Well, what about Mr. Madigan's point that the video demonstrates this? And that's a great point, and thank you for bringing it up, because the video is extremely important. It was never discussed in the opinion. It was never reviewed. And that's another part of the issue is that the district court should look at the entirety of the record and make all reasonable inferences in favor of the non-moving party. The video is not even discussed. The video is extremely important because it shows when the leg is snapped. It shows when the arms are coming back from behind his back and towards the head. It shows the officer standing and kneeling on his head and his shoulders and his neck area. It shows that the officers were where he was already in custody. And then finally, that officer that instigated the entire incident slaps the phone and breaks the phone out of the individual that was videotaping the incident, which, again, I think goes to malicious conduct or a conscious disregard towards the incident or trying to cover up for the acts that they took. And, again, I don't think I could stress enough that a not guilty verdict by a jury of his peers on three major charges, such as resisting arrest and obstructing official business and assault on a police officer, are very significant. And I think it shows possibility, the veracity of the information that was provided by the officers and their trustworthiness. And for that, your honors, I request that the court overturn the qualified immunity and remand this back. Thank you. Thank you. All right, counsel, thank you for your arguments. The case will be submitted.